**25TH JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES**

**STATE OF LOUISIANA**

NO.                                                           DIVISION:

**THOMPSON METAL FAB, INC.**

**VS.**

**VENTURE GLOBAL PLAQUEMINES LNG, LLC & KZJV, LLC**

FILED: _____          _____
                                                                    **DEPUTY CLERK**

**PETITION**

Thompson Metal Fab, Inc., for its petition against Venture Global Plaquemines LNG, LLC and KZJV, LLC, alleges as follows:

**PARTIES AND VENUE**

**1.**

The plaintiff, Thompson Metal Fab, Inc. ("Thompson"), is an Oregon corporation with its principal place of business in Vancouver, Washington.

**2.**

Defendant Venture Global Plaquemines LNG, LLC ("Venture") is a Delaware limited liability company with its principal business establishment in Louisiana in Baton Rouge.

**3.**

Defendant KZJV, LLC ("KZJV") is a Texas limited liability company with its principal business establishment in Louisiana in Baton Rouge.

**4.**

Venue is proper in this judicial district under Code of Civil Procedure articles 76.1 and 77.

**FACTUAL BACKGROUND**

**5.**

Venture is the owner and developer of a liquefied natural gas facility ("LNG Facility") in Plaquemines Parish that performs liquefaction and export of LNG. Venture owns the immovable property that comprises the LNG Facility. Venture also possesses a leasehold interest in the land

1

on which the LNG Facility was built, which is owned by Plaquemines Port Harbor & Terminal.

**6.**

Venture hired KZJV as its EPC (engineering, procurement, and construction) contractor for the LNG Facility (the "Project"). According to the Notice of Contract filed in the Plaquemines Parish mortgage records on November 30, 2021 (File No. 2021-00004703), the estimated value of the Venture–KZJV contract was $3.2 billion.

**7.**

In early 2024, KZJV discussed with Instafab Company, Inc. ("Instafab") its need to procure fabricated steel for the Project. Instafab, like Thompson, is a heavy structural steel and plate fabricator. Ultimately, KZJV agreed that the fabricated steel necessary to perform its obligations to Venture would be supplied by Instafab, Thompson, and a third, uninvolved fabricator (collectively, the "Fabricators").

**8.**

Instafab communicated with KZJV on behalf of all of the Fabricators regarding steel for the Project. Instafab served as an intermediary between KZJV—a general contractor in need of steel—and the Fabricators—suppliers of that steel.

**9.**

Instafab facilitated KZJV's retention of Thompson as a supplier. Through Instafab, Thompson provided its redlines of the Terms and Conditions issued by KZJV for suppliers to the Project (the "T&Cs"). Those T&Cs provide, among other things, several mechanisms to facilitate payment to any person or entity that supplies labor or materials for the Project. KZJV agreed to Thompson's role as a supplier and approved the quality of its materials.

**10.**

Once KZJV agreed to utilize the Fabricators as its suppliers, it issued a Letter of Award to Instafab on February 12, 2024. Instafab sent that letter to Thompson the same day, informing Thompson that the Fabricators were selected to supply steel to KZJV for use on the Project.

**11.**

Several days later, Instafab sent a "purchase order" to Thompson that identified the portion of the steel for the Project to be fabricated by Thompson and the pricing structure for same. Representatives of Instafab and Thompson signed the document to memorialize their shared understanding of Thompson's scope.

**12.**

Although the document Instafab sent Thompson contained the company's standard terms and conditions, the communications between KZJV and Instafab—as well as the KZJV T&Cs themselves—evidence KZJV's intention that all suppliers on the project would be bound by KZJV's T&Cs.

**13.**

Indeed, the language and behavior of KZJV and the Fabricators throughout the Project reflect that the relationship between KZJV and each of the Fabricators was that of a general contractor and a supplier. Among those indicia of their respective roles:

- KZJV performed a quality control audit of Thompson prior to its approval of Thompson as a fabricator for the Project.

- Each of the Fabricators was responsible for some portion of the Project's steel fabrication, and that steel was delivered directly to the work site (rather than to another Fabricator who incorporated that material into its own product).

- On at least one occasion, Thompson was preparing to send a truck with already-loaded materials to the worksite, but it offered to also take materials fabricated by Instafab, as its truck had available capacity.

- Instafab referred to its relationship with Thompson as a "partnership."

**14.**

Thompson fulfilled all of its obligations to KZJV on the Project. Thompson fabricated steel according to the drawings supplied and quality standards set by KZJV. Thompson sent all the compliant material required of it to the worksite for incorporation into the Project. Thompson worked considerable labor hours, including overtime and double-time, to ensure that KZJV could fulfill all of the obligations it owed to Venture, the property owner. Thompson never received any complaints about the quality of materials it provided.

**15.**

Thompson sent the following invoices to Instafab for the steel it fabricated, which payment Instafab was intended to facilitate with KZJV:

| Date | Invoice No. | Amount Due |
|---|---|---|
| 2/27/2024 | 16272 | $159,068.25 |
| 3/14/2024 | 16286 | $355,821.35 |
| 3/26/2024 | 16305 | $61,986.15 |
| 3/29/2024 | 16319 | $31,397.17 |
| **TOTAL** | | **$608,272.92** |

**16.**

KZJV benefited from Thompson's work on the Project. In addition to the value of the fabricated steel, KZJV enjoyed the benefits of Thompson's supplying material, which enabled KZJV to fulfill its own contractual obligations to Venture. KZJV benefited from extra expenses Thompson incurred to expedite its fabrication to meet KZJV's needs. And KZJV gained the benefit of Thompson's expending additional hours to account for issues with KZJV's drawings or specs.

**17.**

Venture also benefited from Thompson's work on the Project. Thompson's involvement made the Project possible. And its expedited fabrication (for which Thompson incurred additional costs) allowed Venture to move forward with its plans for the LNG Facility more quickly than it would have without Thompson.

**18.**

Instafab received payment from KZJV for work performed by the Fabricators. Some of this money was specifically intended to compensate Thompson for its scope of work. Upon information and belief, KZJV withheld some portion of money designated for work done by the Fabricators as retainage.

**19.**

Thompson did not receive any disbursement of money that KZJV paid or retained for work performed and materials supplied by the Fabricators. Consequently, Thompson provided KZJV

(among others) with multiple written notices of its claim for amounts owed. Those notices were sent on or about June 7, 2024, July 9, 2024, and May 28, 2025.

**20.**

Despite these numerous demands and requests for payment, Thompson has still not been paid for even the first dollar of work it performed or the materials it supplied that were integral to KZJV's completion and full performance of its obligations under its $3.2 billion contract.

### CLAIMS

#### Breach of Contract—Against KZJV

**21.**

The allegations in Paragraphs 1–20 are incorporated herein by reference.

**22.**

KZJV, through Instafab, retained Thompson to provide fabricated steel for the Project. Thompson did so.

**23.**

By failing to pay Thompson the amount it is owed for those services—or any amount at all—KZJV breached the parties' contract.

**24.**

As a result, Thompson has been damaged and is entitled to recover damages in the amount of the principal amount remaining owed plus all damages sustained as a result of the breach.

#### Misapplication of Payments—Against KZJV

**25.**

The allegations in Paragraphs 1–24 are incorporated herein by reference.

**26.**

La. Rev. Stat. § 9:4856 prohibits a contractor (or its agent), who has received money under a construction contract, from knowingly failing to apply money received under the contract to settle claims made by sellers of movables for that construction.

5

**27.**

A contractor who violates this statute is responsible for the attorneys' fees and court costs of that seller of movables and shall be ordered to pay a statutory penalty.

**28.**

KZJV has been (or is) in possession of amounts of money that Thompson is owed for movable property used for the Project.

**29.**

KZJV knew of Thompson's claims for money due on account of materials used on the Project as of June 7, 2024, at the latest.

**30.**

Upon information and belief, KZJV had possession of at least a retainage for materials provided by the Fabricators at some point after it knew of Thompson's claims for compensation. This violates the statute. And to the extent that KZJV withheld or paid to Instafab any amounts of money owed for Thompson's portion of materials provided at any time after it had notice of Thompson's claim, that violates the statute as well.

**Detrimental Reliance—Against KZJV**

**31.**

The allegations in Paragraphs 1–30 are incorporated herein by reference.

**32.**

KZJV's T&Cs, which Thompson reviewed before agreeing to serve as a fabricator for the Project, provide several mechanisms to facilitate payment to any person or entity that supplies labor or materials for the Project.

**33.**

Thompson believed that KZJV would enforce its own T&Cs and utilize those mechanisms to make sure that anyone who provided materials or labor for the Project would be compensated.

**34.**

Thompson would not have agreed to fabricate and supply materials for the Project if it

believed that KZJV would not ensure payment for the labor and material providers in accordance with its T&Cs.

**35.**

In the alternative to Thompson's contract-based claims, if the finder of fact should find that no contract exists between KZJV and Thompson, KZJV is liable to Thompson under the theory of detrimental reliance.

**36.**

Accordingly, and only if the trier of fact should determine that there is no enforceable contract obligating KZJV to compensate Thompson for the materials it supplied for the Project, Thompson is entitled to judgment against KZJV for amounts incurred as a result of its reasonable, justifiable reliance on KZJV's representations, in an amount to be proven at trial.

**Enrichment Without Cause or *Actio de in Rem Verso*—Against KZJV and Venture**

**37.**

The allegations in Paragraphs 1–36 are incorporated herein by reference.

**38.**

Thompson supplied materials for the Project, including on an accelerated basis and while incurring additional costs as required because of KZJV's drawings or specs.

**39.**

Thompson's supplying of materials benefited KZJV, including by enabling KZJV to timely fulfill its contractual obligations to Venture and by its receiving expedited or additional work at no extra cost.

**40.**

Venture benefited from Thompson's work (and its expedited fabrication efforts) by making the Project possible and allowing Venture to move forward with its plans for the LNG Facility faster than it otherwise would have.

**41.**

Thompson has not been paid any amounts for the materials it supplied for the Project, even

7

though no complaints have been made about the material quality.

**42.**

In the alternative to Thompson's contract-based claims, if the finder of fact should find that no contract exists between KZJV and Thompson, and if there is no other available remedy at law, KZJV is liable to Thompson for enrichment without cause pursuant to La. Civ. Code art. 2298, *et seq.*

**43.**

As Thompson claims no other available remedy at law as to Venture, Venture is liable to Thompson for enrichment without cause pursuant to La. Civ. Code art. 2298, *et seq.*

**44.**

Accordingly, and only if the trier of fact should determine that there is no enforceable contract obligating KZJV to compensate Thompson for the materials it supplied for the Project, Thompson is entitled to judgment against KZJV for the fair and reasonable value of those materials, under the theory of *actio de in rem verso* or enrichment without cause.

**45.**

Additionally, Thompson is entitled to judgment against Venture for the fair and reasonable value of the materials it supplied, under the theory of *actio de in rem verso* or enrichment without cause.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Thompson, prays:

1. That, after due proceedings, judgment be rendered in Thompson's favor and against KZJV and Venture in accordance with the allegations and damages outlined in this petition;

2. For attorneys' fees, court costs, and statutory penalties;

3. For all costs of these proceedings;

4. For pre- and post-judgment interest; and

5. For all equitable and general relief to which Thompson may be entitled, under any theory whatsoever, including for any and all damages flowing from Venture's and KZJV's conduct, whether pleaded or not.

Respectfully submitted,

*Gabrielle Ball*

Thomas M. Flanagan (#19569)
Anders F. Holmgren (#34597)
Gabrielle A. Ball (#39111)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 3300
New Orleans, LA 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com
gball@flanaganpartners.com

*Counsel for Thompson Metal Fab, Inc.*

**PLEASE SERVE:**

Venture Global Plaquemines LNG, LLC
Through its Agent for Service of Process
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

AND

KZJV, LLC
Through its Agent for Service of Process
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816