**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THOMPSON METAL FAB, INC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1772** |
| **VENTURE GLOBAL PLAQUEMINES LNG, LLC AND KZJV, LLC** | **SECTION "B" (5)** |

## ORDER AND REASONS

Before the Court are defendant KZJV LLC's ("KZJV") Motion to Dismiss (Rec. Doc. 8), Thompson Metal Fab, Inc.'s ("Thompson") Opposition (Rec. Doc. 13), and Venture's Reply in Support (Rec. Doc. 16). For the following reasons,

**IT IS ORDERED** that KZJV Motion to Dismiss (Rec. Doc. 8) is **conditionally GRANTED**. Dismissal of Thompson's breach of contract and detrimental reliance claims is subject to reconsideration upon Thompson's filing, no later than **August 7, 2026**, of an amended complaint or supplemental brief addressing the deficiencies noted herein. If Thompson files the amended complaint or supplemental brief, KZJV shall have until **August 14, 2026**, to reply.

**IT IS FURTHER ORDERED** that the Joint Motion to Modify Deadlines and for Expedited Consideration (Rec. Doc. 24) is **DISMISSED AS MOOT**; however, the parties may reurge the motion if the Court, upon reconsideration following Thompson's filing of an amended complaint or supplemental brief, denies KZJV's motion to dismiss Thompson's breach of contract or detrimental reliance claims.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Venture is the owner and developer of a liquified natural gas facility ("LNG Facility"). Rec. Doc. 3-1 at 1. Venture contracted with KZJV, hiring the company as its engineering, procurement, and constructor contractor for the LNG Facility. *Id*. at 2. In early 2024, KZJV entered

1

into a subcontract with Instafab Company, Inc. ("Instafab")–a heavy structural steel and plate fabricator–to secure fabricated steel for the LNG Facility. *Id*; see also Rec. Doc. 7-2 at 2. Instafab later facilitated KZJV's retention of Thompson Metal Fab, Inc. ("Thompson") as a supplier of fabricated steel necessary for the LNG Facility. Rec. Doc. 3-1 at 1. Instafab was to serve as an intermediary between KZJV and Thompson. *Id*. KZJV agreed to Thompson's role as a supplier and allegedly approved of the quality of its materials. *Id*. On February 12, 2024, KZJV issued a Letter of Award to Instafab; subsequently, Instafab sent the Letter of Award to Thompson, informing it that Thompson would supply steel for the LNG Facility. *Id*.

Several days after the issuance of the Award Letter, Instafab sent a purchase order to Thompson that identified the portion of steel that Thompson was to supply for the LNG Facility. Rec. Doc. 3-1 at 3. Representatives of Instafab and Thompson signed the document to memorialize their agreement. *Id*. Thompson alleges that communications between KZJV and Instafab, as well as KZJV's Terms and Conditions, "evidence KZJV's intention that all suppliers on the project [LNG Facility] would be bound by KZJV's [Terms and Conditions]." *Id*. Thompson continues that "the language and behavior of KZJV and the Fabricators…reflect that the relationship between KZJV and each of the Fabricators was that of a general contractor and a supplier." *Id*. Thompson alleges that KZJV performed quality control audits of Thompson prior to its approval as a supplier; that Thompson supplied steel directly to the LNG Facility; that Thompson offered to take materials from another supplier directly to the work site; and that Instafab referred to its relationship with Thompson as a "partnership." *Id*.

Thompson claims that it fulfilled all its obligations to KZJV concerning the LNG Facility and that it never received any complaints about the quality of materials it provided. Rec. Doc. 3-1 at 3. Thompson stresses that it "worked considerable hours, including overtime and double-time,

to ensure that KZJV could fulfill all of the obligations it owed to Venture." *Id*. According to Thompson, KZJV and Venture benefited from it's work on the LNG Facility. *Id*. at 4. To be compensated for the steel it fabricated, Thompson sent invoices to Instafab which were cumulatively valued at $608,272.92. *Id*. at 4. However, despite Instafab having received payment from KZJV for the work performed by Thompson and other fabricators, Thompson has yet to be paid for the steel that it supplied for the LNG Facility. *Id*. at 4–5.

On December 10, 2024, Thompson filed a lawsuit in the 25th Judicial District Court, Plaquemines Parish, Louisiana, asserting claims of breach of contract, negligence, and conversion against Instafab, claiming that the company owed it $608,272.92 for the steel that it fabricated for the LNG Facility. Rec. Doc. 7-2. Instafab later filed for receivership in the Superior Court of Washington for Clark County, which the court granted on February 19, 2025. The Washington court enjoined all "creditors, claimants, governmental entities, and other parties" from pursuing certain claims against Instafab and additionally ordered the circulation of notice to all creditors and lien holders of their rights and obligation to submit a proof of their claims with the receiver. Rec. Doc. 7-4 at 3, 11.

On July 31, 2025, Thompson filed a second lawsuit, this time against KZJV and Venture, in the 25th Judicial District Court, Plaquemines Parish. Rec. Doc. 3-1. In the second action, Thompson seeks, as it did from Instafab, $608,272.92 for the steel it supplied for the LNG Facility. *Id*. at 4. Thompson asserts against KZJV claims for breach of contract, misapplication of payments, detrimental reliance, and enrichment without cause; against Venture, Thompson asserts only an enrichment without cause claim. *Id*. at 5–7. On August 29, 2025, KZJV removed the second lawsuit to this court. Rec. Doc. 3. Venture has filed a motion to dismiss Thompson's enrichment

without cause claim against it. Rec. Doc. 7. KZJV has similarly filed a motion to dismiss the claims against it. Rec. Doc. 8. Thompson opposes both motions. Rec. Docs. 13, 14.

### LAW AND ANALYSIS

### A. Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's pleading standard demands more than "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A defendant may file a Rule 12(b)(6) motion to dismiss if they contend that a plaintiff's complaint does not satisfy Rule 8's pleading standard. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is plausible when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the plaintiff is not entitled to relief. *Id*. at 679. A court must accept the complaint's factual allegations as true and draw "all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

In considering a 12(b)(6) motion, a court generally is limited to the face of the pleadings. *Xavier v. Belfor USA Grp., Inc.*, No. CIV.A. 06-491, 2007 WL 4224320, at *1 (E.D. La. Nov. 26, 2007). However, a court is permitted to rely on documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lane Star Fund v (U.S.), L.P v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court may also consider matters of public record and those of which a Court may take judicial notice. *Xavier*, 2007 WL 4224320, at *1.

4

### B. Analysis

KZJV seeks dismissal of the claims Thompson has asserted against it, which are (1) breach of contract, (2) detrimental reliance, (3) unjust enrichment, and (4) misapplication of payments under the Private Works Act. Based on the allegations in Thompson's complaint and the arguments the parties have presented, the Court holds that KZJV's motion to dismiss is **GRANTED**.

### 1. Breach of Contract

Thompson's breach of contract claim rests, in part, on the KZJV-Instafab Contract, wherein Instafab agreed to supply fabricated steel to KZJV so that KZJV can fulfill its obligations to Venture. Rec. Doc. 3-1 at 2; *see also* Rec. Doc. 13 at 9 (stating that "[i]n relevant part, that claim is based on KZJV agreeing to purchase steel for the project from Thompson, through Instafab."). Thompson was not a party to the KZJV-Instafab Contract. Instead, Thompson had a separate contract with Instafab (*i.e.*, the "purchase order"), wherein Thompson agreed to provide fabricated steel for the LNG Facility at set prices. Rec. Doc. 3-1 at 3. *Id*. KZJV was not a party to the purchase order, nor does Thompson allege or argue that Thompson or Instafab served as KZJV's agent when negotiating and ultimately signing the purchase order. At issue, therefore, is whether Thompson can maintain its breach of contract claim when (1) it was not a party to the KZJV-Instafab Contract, and (2) when KZJV was not a party to the Instafab-Thompson Contract setting out the price for Thompson's production of fabricated steel.

A party asserting a breach of contract claim must show the existence of a valid contract as well as privity of that contract. *See, e.g., Pearl River Basin Land & Dev. Co. v. State ex rel Governor's Off. Of Homeland Sec. & Emergency Preparedness*, 2009-0084 (La. App. 1 Cir. 10/28/09), 29 So. 3d 589, 593 (stating that "no action for breach of contract may lie in the absence of privity of contract between the parties."). Further, privity of contract does not exist between a plaintiff and defendant because the plaintiff contracted with a third party who, in turn, contracted

5

with the defendant. *Id*. Nor is privity of contract established by reason of a defendant's consent to or knowledge of plaintiff's contract with a third-party who separately contracts with defendant. *Landco Constr., LLC v. Precision Constr. & Maint*., LLC 2017-1060 (La. App. 1 Cir. 2/21/18). However, while generally only parties to a contract may assert a breach of contract claim, "[a]n undisclosed principal, upon the revealing of his identity, has the right to bring suit to enforce the contract directly against the party who contracted with his agent." *Woodlawn Park Ltd. P'ship v. Doster Const. Co.*, 623 So. 2d 645, 647 (La. 1993).

Here, Thompson does not allege that it signed the KZJV Contract. *See generally* Rec. Doc. 3-1. Nor does Thompson allege that KZJV was a party to Thompson's contract with Instafab (*i.e.*, the purchase order). *Id*. If that were the end of the matter, Thompson's claim would need to be dismissed. However, Thompson asserts that "Instafab acted as a limited-purpose agent to the Fabricators to facilitate the provision of steel to KZJV. Instafab acted on Thompson's behalf." Rec. Doc. 13 at 10. Thompson's complaint does include allegations which, if taken as true, suggest that Instafab acted as Thompson's agent. *See* Rec. Doc. 3-1 at 2 ("Instafab communicated with KZJV on behalf of all of the Fabricators"); see also id ("Instafab served as an intermediary between KZJV…and the Fabricators."), and *id* ("Through Instafab, Thompson provided its redlines of the Terms and Conditions issued by KZJV for suppliers to the Project."). While the Court does not decide, at this time, whether Instafab acted as Thompson's agent, Thompson has at the very least adequately alleged that this was so.

However, even if Thompson adequately alleged that Instafab served as its agent and that it can therefore maintain its breach of contract claim, Thompson's complaint is light on factual allegations concerning which provisions of the KZJV-Instafab Contract that KZJV breached, or how the breach resulted in Thompson's damages. Thompson refers in a conclusory manner to

6

payment mechanisms which, presumably, would require KZJV to pay Thompson. But the Court does not know what these mechanisms are. Thompson alleges that it sent invoices to Instafab "which payment Instafab was intended to facilitate with KZJV." Rec. Doc. 3-1 at 4.  However, it is not clear what provision required that KZJV ensure that payment make its way to Thompson. Thompson claims that even if KZJV fully paid Instafab for the fabricated steel that Thompson and other companies provided, that fact "does not excuse" KZJV's contractual obligations "which will be further clarified as discovery proceeds."  Rec. Doc. 13 at 11. However, understanding KZJV's contractual obligations is essential to the question of whether Thompson can assert a breach of contract claim against KZJV at all. Thompson cannot rely on discovery as a fishing expedition to determine if it has a valid claim against KZJV. *See, e.g., Floyd v. City of Kenner*, 351 Fed. App'x 890, 898 (5th Cir. 2009) (stating that "discovery is not the place to determine if one's speculations might actually be well-founded."). Because Thompson does not provide sufficient allegations concerning KZJV's contractual obligations to Thompson, the motion to dismiss the breach of contract claim is **GRANTED**, subject to reconsideration upon Thompson's filing of a supplemental brief and/or amended complaint filed no later than **August 7, 2026**, addressing the deficiencies noted herein. If Thompson files its supplemental brief or amended complaint, KZJV may respond no later than **August 14, 2026**.

### 2.  *Detrimental Reliance*

Next is Thompson's detrimental reliance claim. Thompson asserts that it reviewed KZJV's Terms and Conditions prior to agreeing to supply fabricated steel for the LNG Facility. Rec. Doc. 3-1 at 6. Thompson claims that it would not have agreed to supply steel if it believed that KZJV would not ensure payment pursuant to its Terms and Conditions. *Id*. at 6–7. In other words,

7

Thompson asserts that it relied on KZJV's assurances provided in the Terms and Conditions to its detriment. *Id*.

Article 1967 of the Louisiana Civil Code, which defines detrimental reliance, provides that:

"A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable."

LA. Civ. Code. Ann. art. 1967. A plaintiff asserting a detrimental reliance claim must therefore establish three elements: (1) a representation by conduct or words; (2) justifiable reliance on the representation; and (3) a change in position to one's detriment resulting from the reliance. *Cenac v. Orkin, LLC*, 941 F.3d. 182, 198 (5th Cir. 2019). And as codified in Article 1967, a plaintiff must also plead that "the defendant knew or should have known that the promise would induce the plaintiff to rely on it to [their] detriment[.]" *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 290 (5th Cir. 2024) (citing *Wooley v. Lucksinger*, 2006-1167, (La. App. 1 Cir. 5/4/07), 961 So. 2d 1228, 1238.

Thompson's detrimental reliance claim fails because it is not clear exactly what representation or promise KZJV made to Thompson, or even that KZJV knew or should have known that any alleged promise would induce Thompson to agree to supply steel to the LNG Facility at the prices set forth in the purchase order between Instafab and Thompson. As noted, Thompson generally alleges that the Terms and Conditions include payment mechanisms which would ensure that it received payment. But as explained, the Court has no idea what these payment mechanisms are or how they bind KZJV to pay Thompson rather than, say, Instafab itself. This issue is precisely why Thompson's reliance on *D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 727 (E.D. La. 2020), is unpersuasive. In that case, as Thompson

recognizes, the plaintiff "made specific, material representations about its ability to perform that were contained in a document the parties considered binding." *D.H. Griffin Wrecking Co., Inc.*, 463 F. Supp at 727. Additionally, the parties executed between themselves a MOU which provided specific representations, including for the provision of services for a set price, a promise to procure liability insurance, a promise that the plaintiff would be included in certain communications, and a promise to provide necessary engineering for the completion of a project. *Id*. Thompson's vague and conclusory allegations about payment mechanisms fail to meet this level of specificity.

Two other points merit further discussion. First, the exact price for the steel Thompson produced was set forth in a purchase order that KZJV was not a party to; as such, it is unclear to the Court how Thompson could justifiably rely on promises made by KZJV in the KZJV-Instafab contract when the price of steel set in the purchase order was seemingly determined by Instafab and Thompson only. Second, Thompson's Complaint does not sufficiently allege that KZJV knew or should have known that its alleged promises would induce Thompson to rely on the promises to its detriment. Thompson alleges that it "believed KZJV would enforce its T&C" and that KZJV treated all suppliers as if they "would be bound by KZJV's T&Cs" Rec. Doc. 3-1 at 3. But these allegations do not amount to an assertion that KZJV knew or should have known that its promises– again, only vaguely referred to by Thompson–would induce Thompson to rely on those promises to its detriment. Without more, the Court cannot say that Thompson has adequately alleged a detrimental reliance claim. As such, the motion to dismiss the detrimental reliance claim is **GRANTED**, subject to reconsideration upon Thompson's filing of a supplemental brief and/or amended complaint filed no later than **August 7, 2026**, addressing the deficiencies noted herein. If Thompson files its supplemental brief or amended complaint, KZJV may respond no later than **August 14, 2026**.

### 3. Private Works Act

Alternatively, Thompson asserts a claim for misapplication of payments under Louisiana's Private Works Act. Rec. Doc. 3-1 at 5. That statute was enacted to facilitate the construction of improvements on immovable property and serves that purpose by granting "certain rights to enumerated persons to facilitate recovery of the costs of their work from an owner with whom they lack privity of contract." *Bear Indus., Inc. v. Hanover Ins*. Co., 2017-0301 (La. App. 1 Cir. 1/4/18), 241 So. 3d 1159, 1162. Because the Private Works Act "is in derogation of general contract law…it must be strictly construed." *Id*. Section 4802 designates the following "enumerated persons" as having claims under the Private Works Act:

(1) Subcontractors, for the price of their work;
(2) Laborers or employees of the contractor or a subcontractor, for the price of work performed at the site of the immovable;
(3) Sellers, for the price of movables sold to the contractor or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable;
(4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract; and
(5) Professional consultants engaged by the contractor or a subcontractor, and the professional subconsultants of those professional consultants, for the price of professional services rendered in connection with a work that is undertaken by the contractor or subcontractor.

The only class of persons that could be relevant in the instant case is that of sellers; however, for the reasons explained herein, Thompson has no standing under the Private Works Act as a seller. To have rights under the Private Works Act, a seller–or supplier–"must sell directly to a subcontractor or a contractor." *Cable & Connector Warehouse, Inc. v. Omnimark, Inc*., 96-2831 (La. App. 4 Cir. 9/12/97), 700 So. 2d 1273, 1275. A "contractor" is "one who contracts with an owner to perform all or part of a work." La. Rev. Stat. § 9:4807(A). There is no dispute that KZJV served as the contractor for the LNG Project. Meanwhile, a "subcontractor" is "one who, by contract made directly with a contractor, or by a contract that is one of a series of contracts

emanating from a contractor, is bound to perform all or a part of a work contracted for by the contractor." La. Rev. Stat. § 9:4807(C). Under Louisiana law, "a subcontractor is a worker who actually participates in the building or erection of the edifice." *Leonard B. Hebert, Jr. & Co. v. Kinler*, 336 So. 2d 922, 924 (La. Ct. App. 1976).

Thompson does not allege that Instafab participated in the building or erection of the LNG Facility; instead, Thompson alleges that Instafab was only responsible for providing material for the construction of that building. Rec. Doc. 3-1 at 2. As such, Instafab was a "materialman." Se*e, e.g., Leonard B. Hebert*, 336 So. 2d at 924 (explaining that a "materialman is one who supplies material either manufactured or fabricated for use" in the edifice). Necessarily, as a supplier of fabricated steel, Thompson was also a materialman. Given its own allegations, Thompson cannot qualify as a seller under the Private Works Act because it did not sell directly to KZJV (the contractor) nor sold directly to any subcontractor on the project. Instead, Thompson sold materials to Instafab, another materialman. Under Louisiana law interpreting the Private Works Act, a materialman (such as Thompson) who furnishes material to another materialman (such as Instafab) "has no rights under the Private Works Act." *Cable & Connector Warehouse*, 700 So.2d at 1275. As such, because Thompson's misapplication of payments claim is part of the Private Works Act, and because Thompson does not have standing under that Act as only a "materialman to a materialman," KZJV's motion to dismiss this claim is **GRANTED**, and the claim is therefore **DISMISSED**.

### 4.  *Unjust Enrichment*

Under Louisiana law, an unjust enrichment claim contains the following elements: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the

11

enrichment and impoverishment; and (5) no other remedy at law available to the plaintiff. *Garber v. Badon & Ranier*, 2007-1497 (La. App. 3 Cir. 4/2/08), 981 So. 2d 92, 100. The fourth element, concerning an absence of justification or cause, excludes "cases in which the enrichment results from a valid juridical act or the law." *Zeising v. Shelton*, 648 F.App'x 434, 439 (5th Cir. 2016). A contract constitutes a "valid juridical act." *Id* (holding that there was no unjust enrichment because the enrichment was the result of a contract). The Fifth Circuit and Louisiana Supreme Court have also explained that an enrichment is justified if "it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee…and the enrichee…or between a third party…and the enrichee." *Id* (citing *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 122 (La. 1974)).

Thompson alleges that Venture hired KZJV as its engineering, procurement, and construction contractor for the LNG Facility. Rec. Doc. 3-1 at 2. Thompson further alleges that KZJV and Instafab entered a contract for the latter to provide fabricated steel for the LNG Facility. *Id*. Instafab then "facilitated KZJV's retention of Thompson as a supplier." *Id*. Thompson therefore acknowledges that KZJV's enrichment, *i.e.*, receipt of fabricated steel from Thompson through Instafab, was the result of the KZJV-Instafab contract. And because the enrichment was the result of a contract between KZJV (the enrichee) and Instafab (a third party), the enrichment was justified and not without cause. *See Edmonston*, 289 So.2d at 122.

Thompson's contrary arguments are not persuasive. Thompson asserts that the "enrichment at issue is broader than" the "value of the steel provided and contracted for." Rec. Doc. 13 at 18. It continues that it "went beyond its promises in the contract" by expediting fabrication, working through difficult design files, and working overtime which "enriched Venture without a valid basis." *Id*. To the extent that Thompson claims that its unjust enrichment claim rests, in part, on

additional expenses incurred that were not covered by the contract, that claim must be rejected. An unjust enrichment claim "cannot lie simply because a contract was poorly written." *Fisk Elec. Co. v. Winter Park Constr. Co.*, No. CIV.A 15-700, 2015 WL 3650907 (E.D. La. June 11, 2015) (Lemelle, J) (rejecting unjust enrichment claim based on contention that contract did not address additional job-related expenses). Moreover, because "it is clear that there is a contract…that governs the rights of the parties," the Court finds that Thompson cannot recover under a theory of unjust enrichment. *Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 587 (E.D. La. 2001).

For the reasons provided, KZJV's motion to dismiss Thompson's unjust enrichment claim is **GRANTED**, and the claim is therefore **DISMISSED**.

New Orleans, Louisiana, this 21st day of July 2026

SENIOR UNITED STATES DISTRICT JUDGE

13